UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYRONE ANTHONY SHOLES,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>B. CATES, Warden,<br><br>　　　　Respondent. | Case No.  1:21-cv-01006-DAD-HBK<br><br>ORDER DENYING PETITIONER'S REQUEST FOR APPOINTMENT OF COUNSEL AND TO CONSTUE HIS HABEAS PETITION AS A § 1983 COMPLAINT<br><br>FINDINGS AND RECOMMENDATIONS TO GRANT RESPONDENT'S MOTION TO DISMISS [1]<br><br>FOURTEEN-DAY OBJECTION PERIOD<br><br>(Doc. No. 14) |

　　　　Petitioner Tyrone Anthony Sholes ("Petitioner" or "Sholes"), a state prisoner, initiated this action by filing a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254 on May 11, 2021.[2]  (Doc. No. 1).  In response, Respondent filed a motion to dismiss and the state court record

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2019).

[2] Although filed on June 14, 2021, the Court applies the "prison mailbox rule" to *pro se* prisoner petitions, deeming the petition filed on the date the prisoner delivers it to prison authorities for forwarding to the clerk of court.  *Houston v. Lack*, 487 U.S. 266 (1988).  The Petition was dated and signed on May 11, 2021. (Doc. No. 1 at 10).  "Absent evidence to the contrary in the form of prison logs or other records, we will assume that [petitioner's] motion was delivered to prison authorities the day he signed it...."  *Washington v. United States,* 243 F.3d 1299, 1301 (11th Cir.2001) (per curiam).

in support. (Doc. Nos. 14, 15). Petitioner filed an opposition (Doc. No. 18), and Respondent filed a reply. (Doc. No. 20). For the reasons stated below, the undersigned recommends the District Court grant Respondent's motion to dismiss and dismiss the petition with prejudice as time barred; or, in the alternative, for failing to state a cognizable claim for relief under habeas corpus.

## I. BACKGROUND

Sholes is serving a thirty-three (33) year state prison sentence stemming from his 2014 conviction for carjacking, two counts of second-degree robbery, assault with a firearm, possession of a controlled substance, possession of marijuana for sale, and transport of marijuana, that was entered by the Tulare County Superior Court. (Doc. No. 1 at 1, 19-37). The petition raises two grounds for relief challenging the state courts' denial of his state habeas petition. (*See generally* Doc. No. 1). Specifically, Sholes contends that the California Department of Corrections and Rehabilitation: (1) improperly classified his convictions as "violent" as opposed to "serious" under state law; and (2) denied him his due process rights under the Sixth and Fourteenth Amendments because the reclassification denied him nonviolent parole consideration under the California constitution. (*Id*. at 8-10).

Respondent contends the petition should be dismissed because it is time barred and fails to state a cognizable federal habeas claim. (Doc. No. 14). In response, Sholes argues he is entitled to equitable tolling, concedes his claim is not properly brought as a federal habeas claim, and seeks to convert the petition to a 42 U.S.C. § 1983 claim. (Doc. No. 18). In reply, Respondent argues there is no basis for equitable tolling, and restates the initial argument that Sholes' challenge to the application of state law is not cognizable as a federal habeas claim. (Doc. No. 20).

## II. APPLICABLE LAW

### A. Standard of Review

Under Rule 4, if a petition is not dismissed at screening, the judge "must order the respondent to file an answer, motion, or other response" to the petition. R. Governing 2254 Cases 4. The Advisory Committee Notes to Rule 4 state that "the judge may want to authorize the

respondent to make a motion to dismiss based upon information furnished by respondent." In *White v. Lewis*, 874 F.2d 599, 602-03 (9th Cir. 1989), the Ninth Circuit held that a motion to dismiss based on procedural default is proper in habeas proceedings. Since that time, the Ninth Circuit has affirmed cases where habeas petitions were dismissed on a respondent's motion to dismiss for untimeliness. *Orthel v. Yates*, 795 F.3d 935, 938 (9th Cir. 2015) (affirming district court's grant of respondent's motion to dismiss petition as untimely because petitioner "did not establish an exceptional circumstance that would warrant equitable tolling"); *Stancle v. Clay*, 692 F.3d 948, 951 (9th Cir. 2012) (same); *Velasquez v. Kirkland*, 639 F.3d 964, 966 (9th Cir. 2011). In doing so, the Ninth Circuit has explicitly relied on information supplied outside the pleadings and its attachments, such as medical records. *Orthel*, 795 F.3d at 940. The undersigned finds because the statute of limitations is a procedural bar, the Court may consider the documents submitted by Petitioner and Respondent for purposes of determining whether Petitioner is entitled to equitable tolling. *Id*.

**B. AEDPA's Statute of Limitations**

Title 28 U.S.C. § 2244, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, sets a one-year period of limitations to the filing of a habeas petition by a person in state custody. This limitation period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). When challenging state administrative actions, the Ninth Circuit has held that "AEDPA's one year statute of limitations runs from when the 'factual predicate' of the

habeas claims 'could have been discovered through the exercise of due diligence.' As a general rule, the state agency's denial of administrative appeal is the 'factual predicate' for such habeas claims." *Mardesich v. Cate*, 668 F.3d 1164, 1172 (9th Cir. 2012); *see* 28 U.S.C. § 2244(d)(1)(D). Thus, the limitations period began to run on the date Sholes' final administrative appeal was denied.

On July 26, 2018, Petitioner filed an administrative grievance with the California Department of Corrections and Rehabilitation ("CDCR") arguing that "under [Proposition] 57 [he was entitled] to have all of [his] enhancements as well [as] all consecutive sentence to be stricken." (Doc. 1 at 40). In August 2018, the first level response from CDRC noted "they do not have the authority to change a sentence that has been imposed by the Superior Court of California," and denied Petitioner's request that his enhancements and consecutive sentences be stricken. (Doc. 1 at 42-44). On October 2, 2018, at the second level of administrative appeal, Sholes' "request to change from a violent felony to a serious felony" was denied. (*Id*. at 49). On January 17, 2019, the third, and final, administrative level decision denied Sholes' appeal, and specifically found that he is not considered a nonviolent offender because he was convicted of violent felonies and enhancements. (*Id*. at 50-51). The decision also noted that it "exhausts the administrative remedy available to the appellant within CDCR." (*Id*. at 51). Thus, AEDPA's one-year statute of limitations began running the next day, January 18, 2019. Sholes had until January 18, 2020 to file his habeas petition, absent statutory or equitable tolling. *See Patterson v. Stewart*, 251 F.3d 1243, 1246-47 (9th Cir. 2001) (adopting anniversary method to calculate one-year statutory period). As noted *supra*, applying the mailbox rule, Sholes filed his federal petition on May 11, 2021. (Doc. No. 1).

### III. ANALYSIS

#### A. Statutory Tolling

##### 1. Applicable Law

The federal statute of limitations tolls for the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). An application for post-conviction or

other collateral review is "pending" in state court "as long as the ordinary state collateral review process is 'in continuance'—*i.e.*, 'until the completion of' that process.'" *Carey v. Saffold*, 536 U.S. 214, 219 (2002) (citations omitted). "California's collateral review system differs from that of other States in that it does not require, technically speaking, appellate review of a lower court determination." *Id*. at 221. Instead, petitioners are required to file an original habeas petition and a subsequent appeal in each level of court (superior, appellate, and supreme) within a "reasonable" period. *Id.* at 221-22; *Robinson v. Lewis,* 9 Cal. 5th 883, 897 (2020) ("There are no specific time limits for either filing the first [habeas] petition or filing subsequent petitions in a higher court. Instead, California courts employ a *reasonable*ness standard. The claim must generally be presented without substantial delay."). A petition is considered no longer "pending," and the petitioner is barred from AEDPA statutory tolling, if an unreasonable amount of time elapsed between the filing of state court habeas petitions. *Saffold*, 536 U.S. at 221.

To determine whether a habeas claim was filed within a reasonable amount of time, California courts consider three factors. *Robinson,* 9 Cal. 5th at 897. First, "a claim must be presented without *substantial delay.*" *Id*. (emphasis in original). "'Substantial delay is measured from the time the petitioner or his or her counsel knew, or reasonably should have known, of the information offered in support of the claim and the legal basis for the claim.'" *Id*. (quoting *In re Robbins*, 18 Cal. 4th 770, 780 (1998). Second, if a petition was filed with substantial delay, a petition may yet be considered on the merits if the "petitioner can demonstrate *good cause* for the delay." *Id*. (emphasis in original). Third, a petition filed without good cause for substantial delay will be considered if it falls under one of four narrow exceptions. *Id*. Only three of the four exceptions are relevant to noncapital cases: (1) the "'error of constitutional magnitude led to a trial that was so fundamentally unfair that absent the error no reasonable judge or jury would have convicted the petitioner;'" (2) "'the petitioner is actually innocent of the crime or crimes of which he or she was convicted;'" and (3) "'the petitioner was convicted or sentenced under an invalid statute.'" *In re Reno*, 55 Cal. 4th 428, 460 (2012) (quoting *Robbins*, 18 Cal. 4th at 780). The California Supreme Court has opined that a six-month gap delay would normally be "unduly generous," but adopted "a time period of 120 days as the safe harbor for gap delay" for the filing

5

of habeas petitions between state court levels. *Robinson*, 9 Cal. 5th at 901. "A new petition filed in a higher court within 120 days of the lower court's denial will never be considered untimely due to gap delay." *Id*.

For petitions filed in a "reasonable time," a petitioner may count as "pending" the "days between (1) the time the lower state court reached an adverse decision, and (2) the day he filed a petition in the higher state court." *Evans v. Chaviz*, 546 U.S. 189, 193 (2006). This Court "must itself examine the delay in each case and determine what the state courts would have held in respect to timeliness." *Id.* at 198.

### 2. The Petition is Untimely Despite Statutory Tolling

Here, AEDPA's statute of limitations began running on January 18, 2019, when Sholes' third administrative appeal was denied, and continued to run until Sholes filed his first state habeas petition on April 8, 2019.[3] "AEDPA's statute of limitations is not tolled from the time a final decision is issued on direct state appeal and the time the first state collateral challenge is filed because there is no case 'pending' during that interval." *Nino v. Galaza*, 183 F.3d 1003, 1006 (9th Cir. 1999). Accordingly, 94 days elapsed on the AEDPA clock between the finality of direct administrative review and the filing of Sholes' first habeas petition. As noted by Respondent, the limitations period was then tolled from April 8, 2019, the date Sholes filed his first state habeas petition, through March 11, 2020, the date the California Supreme Court denied Sholes' habeas petition. *Id.* at 1006-07 (The limitations period "remains tolled during the intervals between the state court's disposition of a state habeas petition and the filing of the petition at the next state appellate level."); *Delhomme v. Ramirez*, 340 F.3d 817, 821 n.3 (9th Cir. 2003) ("[T]he crucial issue for tolling purposes is whether the petitioner has timely proceeded to the next appellate level, since the one year filing period is tolled to allow the opportunity to complete one full round of review."). Thus, the AEDPA clock commenced running again on March 12, 2020 and continued to run for 285 days until it expired on December 22, 2020. Consequently, Petitioner's federal petition, filed on May 11, 2021, is untimely because it was

---

[3] As correctly noted by Respondent, Sholes is entitled to the benefit of the mailbox rule for his state habeas petitions. (Doc. No. 14 at 2, fn. 1).

filed 140 days after the AEDPA limitations period expired. The petition must be dismissed as time barred unless Sholes can demonstrate that he is entitled to equitable tolling.

### B. Equitable Tolling

#### 1. Applicable Law

AEDPA's statutory limitations period may be equitably tolled. *Holland v. Florida*, 560 U.S. 631, 645 (2010). Equitable tolling is available if a petitioner shows: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Id*. at 649. To show "extraordinary circumstances," a petitioner must show that "the circumstances that caused his delay are both extraordinary and beyond his control"—a high threshold. *Menominee Indian Tribe of Wisconsin v. United States*, 577 U.S. 250, 255 (2016). "The requirement that extraordinary circumstances 'stood in [a petitioner's] way' suggests that an *external* force must cause the untimeliness. *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009) (emphasis added). Furthermore, a petitioner must show that the extraordinary circumstances *caused* the untimely filing of his habeas petition. *See Bills v. Clark*, 628 F.3d 1092, 1097 (9th Cir. 2010) (citing *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003) (explaining that equitable tolling is available only when the extraordinary circumstances were the cause of the petitioner's untimeliness); *Smith v. Davis*, 953 F.3d 582, 595 (9th Cir. 2020) ("Whether an impediment caused by extraordinary circumstances prevented timely filing is a 'causation question.'").

To demonstrate that he has been pursuing his rights diligently, a petitioner must show that he has "been reasonably diligent in pursuing his rights not only while an impediment to filing caused by an extraordinary circumstance existed, but before and after as well, up to the time of filing his claim in federal court." *Smith*, 953 F.3d at 598-99. In other words, "when [a petitioner] is free from the extraordinary circumstance, he must also be diligent in actively pursuing his rights." *Id*. at 599. The diligence required for equitable tolling does not have to be maximum feasible diligence, but rather reasonable diligence. *Holland*, 560 U.S. at 653. And the court is not to impose a rigid impossibility standard on petitioners, especially *pro se* prisoner litigants "who have already faced an unusual obstacle beyond their control during the AEDPA litigation

7

period." *Fue v. Biter*, 842 F.3d 650, 657 (9th Cir. 2016) (quoting *Sossa v. Diaz*, 729 F.3d 1225, 1236 (9th Cir. 2013)). However, "in every instance reasonable diligence seemingly requires the petitioner to work on his petition with some regularity—as permitted by his circumstances—until he files it in the district court." *Davis*, 953 F.3d at 601. Because Petitioner must show diligence before, during, and after extraordinary circumstances prevented him from filing, the relevant time period of the court's analysis is January 18, 2019, the day the statute of limitations began to run, to May 11, 2021, the day petitioner filed his federal petition. *See Davis*, 953 F.3d at 598-99. Admittedly, "the threshold necessary to trigger equitable tolling under AEDPA is very high, lest the exceptions swallow the rule." *Miranda v. Castro*, 292 F.3d 1062, 1066 (9th Cir. 2002) (citations omitted).

### 2. Sholes Fails to Demonstrate Entitlement to Equitable Tolling

Sholes advances three reasons for equitable tolling: (1) he has no legal expertise; (2) he had no access to the law library due to the COVID-19 pandemic; and (3) the limitations period was tolled for 180 days under California's "Emergency Rule 9." (Doc. No. 18 at 1-2, 27).

#### a. Ignorance of the Law

First, Sholes claims he is entitled equitable tolling because he does not understand the law. (Doc. No. 18 at 2). Sholes' argument is unavailing. It is well established that a prisoner's educational deficiencies, ignorance of the law, or lack of legal expertise is not an extraordinary circumstance and does not equitably toll the limitations period. *See Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006) ("A *pro se* petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling."); *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1013, n.4 (9th Cir. 2009) ("While [petitioner's] pro se status is relevant, we have held that a pro se petitioner's confusion or ignorance of the law is not, itself, a circumstance warranting equitable tolling."); *Williamson v. Hubbard*, 27 Fed. App'x. 733, 2001 (9th Cir. 2001) (holding misunderstanding of the law does not entitle petitioner to equitable tolling). Thus, Sholes is not entitled to equitable tolling because of his alleged ignorance of the law.

///
///

### b. Law Library Access

Next, Sholes claims that due to a possible Covid outbreak, the law library was closed "for months and thereafter was limited access to only Perferred [sic] Legal Users (P.L.U. are classified as inmates who have 30-day court deadlines." (Doc. No. 18 at 2). This "denial of access" to legal materials, Sholes argues, gives rise to equitable tolling. (*Id*. at 3). As an initial matter, Sholes is correct that that equitable tolling may be due where prison officials deprived the petitioner of access to his legal documents for the duration of time. *See Lott v. Mueller*, 304 F3d 918, 925 (9th Cir. 2002). However, unlike the petitioner in *Lott*, Sholes does not claim that his legal documents were withheld from him by prison officials at any time.

Moreover, unpredictable lockdowns or library closures do not constitute extraordinary circumstances warranting equitable tolling. *See United States v. Van Poyck*, 980 F.Supp. 1108, 1111 (C.D. Cal. 1997) (inability to secure copies of transcripts from court reporters and lockdowns at prison lasting several days and allegedly eliminating access to law library were not extraordinary circumstances and did not equitably toll one-year statute of limitations). "Petitioner's . . . difficulties and disruptions he encounters with sporadic prison lockdowns are conditions of prison life that are no different than those experienced by the vast majority of incarcerated prisoners attempting to file petitions for writ of habeas corpus. By definition, therefore, such circumstances in themselves are not extraordinary and do not justify equitable tolling." *See id*.; *Galaz v. Harrison*, No. 1:04-cv-05383-TAG HC, 2006 U.S. Dist. LEXIS 17833, at *16 (E.D. Cal. Mar. 27, 2006).

Here, Sholes concedes that there was, in fact, a paging system in place to allow access to the law library "during Covid in the later stages" that he failed to utilize, but further contends that it was "of no consequence" because of his "inability to comprehend law." (Doc. No. 18 at 27). Regardless, Sholes does not demonstrate how his lack of access to the law library after the statute of limitations elapsed prevented him from timely filing his petition; nor does he make a showing of diligence, as required for the granting of equitable tolling. *See Smith*, 953 F.3d at 599.

///

///

### c. Emergency Rule 9

Finally, in his response, Sholes attaches a copy of a document entitled "Appendix I – Emergency Rules Related to COVID-19"[4] and generally contends that he is he would "like to also incorporate in his writ petition the fact of the 180-day tolling period for the Covid 19 pandemic pursuant to Appendix A." (Doc. No. 18 at 27). Presumably, Sholes is referring to "Emergency Rule 9: Tolling statutes of limitations for civil causes of action," which states that "[n]otwithstanding any other law, the statutes of limitations and repose for civil causes of action that exceed 180 days are tolled from April 6, 2020, until October 1, 2020." (Doc. No. 18 at 20). To the extent this request for "incorporation" is intended as an argument that Emergency Rule 9 required the tolling of the limitations period in Sholes' federal habeas case for 180 days, Sholes' argument is unavailing. As noted by Respondent, Emergency Rule 9 was promulgated by the Judicial Council of California to toll the statute of limitations for civil causes of action in matters brought before California state courts. (Doc. No. 20 at 2-3). Moreover, a plain reading of Emergency Rule 9 states that statutes of limitations for civil causes of action are tolled "notwithstanding any other law." (Doc. No. 18 at 20). Here, the relevant inquiry is whether Sholes' petition was timely filed under AEDPA, a federal statute that sets a one-year period of limitations to the filing of a federal habeas petition by a person in state custody. 28 U.S.C. § 2244. Thus, the "Emergency Rule" tolling of statutes of limitations for civil causes of action pending in California state court is not applicable to Sholes' federal habeas claim.

Based upon a review of the record, the undersigned finds Sholes fails to carry his burden of demonstrating that the reasons he cites constitute extraordinary circumstances. Thus, the undersigned recommends that Sholes be denied equitable tolling and his petition be dismissed with prejudice as untimely.

///

---

[4] Petitioner does not identify the exact source of the Appendix attached to his response, but as per Respondent's reply, California's Emergency Rules can be located at https://www.courts.ca.gov/documents/appendix-i.pdf.

### C. In the Alternative the Petition Fails to State a Federal Claim

A federal court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). To pass initial screening under Rule 4, petitioner must allege a violation of "clearly established federal law"—meaning a violation of a U.S. Supreme Court holding. *See White v. Woodall*, 572 U.S. 415, 419 (2014). "[F]ederal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991).

Here, Sholes argues that he has been improperly classified by the CDCR as a "violent" offender, which consequently denies him the "early" parole consideration afforded to those convicted as nonviolent offenders. (Doc. No. 1). However, as noted by Respondent, "Sholes points to no federal constitutional authority entitling him to or making him eligible for nonviolent parole consideration nor does he point to any federal authority providing for a classification of whether a state criminal conviction is considered a violent or nonviolent offense." (Doc. No. 14 at 4). Thus, Sholes' claims of error in the application of state law are not cognizable as a federal habeas claim. *See Estelle*, 502 U.S. at 67 ("it is not the province of a federal habeas corpus court to reexamine state-court determinations on state-law questions."). In the alternative, the undersigned recommends that the petition be dismissed for failure to state a cognizable claim.

### D. Construe Petition as Brought Under § 1983

In his response to Respondent's motion to dismiss, Sholes concedes that he has "been utilizing the wrong [vehicle] to present his argument. Because he is not challenging his conviction. Rather he seeks to hash out the matter of his parole eligibility." (Doc. No. 18 at 4). Consequently, Sholes "seeks shelter under the due process mechanism . . . to challenge the insufficient procedural protection being perpetrated by C.D.R.C. in arbitrarily denying Sholes parole consideration after completion of serving his full term to the primary offense of his conviction." (Doc. No. 18 at 4). To the extent that Sholes is articulating a due process violation under the Fourteenth Amendment, he correctly notes that his claim is better suited to a civil rights complaint filed pursuant to 42 U.S.C. § 1983, not a claim for habeas relief. Thus, Sholes asks the

11

Court to convert the claim to a 42 U.S.C. § 1983 claim, or in the alternative, grant leave to amend. (Doc. No. 18 at 5).

Although a court may convert a habeas petition to a civil rights complaint, the undersigned does not find recharacterization proper in this case. "If the complaint is amenable to conversion on its face, meaning that it names the correct defendants and seeks the correct relief, the court may recharacterize the petition . . .." *See Nettles v. Grounds*, 830 F.3d 922, 936 (9th Cir. 2016) (quoting *Glaus v. Anderson*, 408 F.3d 382, 388 (7th Cir. 2005)). Here, the petition names only the warden as the sole respondent; Petitioner does not name the people who allegedly committed the affirmative acts or omissions that allegedly violated his due process rights. Further, the Court in granting Petitioner *in forma pauperis* status, waived the $5.00 filing fee for a habeas corpus action, not the $350 filing fee that is payable over time and appliable to prisoners prosecuting a civil rights action. To the extent, Petitioner wishes to file a civil rights complaint under § 1983 claim in a separate, properly filed action, the court will direct the clerk of court to provide Sholes with a civil rights complaint form with these Findings and Recommendation as a courtesy.

### E. Petitioner is not Entitled to Appointment of Counsel

Sholes also incorporates a request for the appointment of counsel in his response. (Doc. No. 1 at 22, Doc. No. 14 at 15). There is no automatic, constitutional right to counsel in federal habeas proceedings. *See Coleman v. Thompson*, 501 U.S. 722, 752 (1991); *Anderson v. Heinze*, 258 F.2d 479, 481 (9th Cir. 1958). The Criminal Justice Act, 18 U.S.C. § 3006A, however, authorizes this court to appoint counsel for a financially eligible person who seeks relief under § 2254 when the "court determines that the interests of justice so require." *Id*. at § 3006A(a)(2)(B); *see also Chaney v. Lewis*, 801 F.2d 1191, 1196 (9th Cir. 1986). Moreover, the Rules Governing Section 2254 Cases in the United States District Courts require the court to appoint counsel: (1) when the court has authorized discovery upon a showing of good cause and appointment of counsel is necessary for effective discovery; or (2) when the court has determined that an evidentiary hearing is warranted. *See* Rs. Governing Section 2254 Cases 6(a) and 8(c).

Here, Sholes was able to file his habeas petition, move for an extension of time, and timely file an opposition to Respondent's motion to dismiss without the aid of counsel. The Court finds that the claims raised in the petition do not appear to be complex. Further, the Court does not find the circumstances of this case indicate that appointed counsel is necessary to prevent due process violations. The Court has not authorized discovery in this case and has not determined that an evidentiary hearing is warranted. Accordingly, based upon the record, the Court finds Petitioner has not demonstrated that appointment of counsel is necessary and denies his incorporated motion.

## III. CERTIFICATE OF APPEALABILITY

State prisoners in a habeas corpus action under § 2254 do not have an automatic right to appeal a final order. *See* 28 U.S.C. § 2253(c)(1)(A); *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). To appeal, a prisoner must obtain a certificate of appealability. 28 U.S.C. § 2253(c)(2); *see also* R. Governing Section 2254 Cases 11 (requires a district court to issue or deny a certificate of appealability when entering a final order adverse to a petitioner); Ninth Circuit Rule 22-1(a); *United States v. Asrar*, 116 F.3d 1268, 1270 (9th Cir. 1997). Where, as here, the court denies habeas relief on procedural grounds without reaching the merits of the underlying constitutional claims, the court should issue a certificate of appealability only "if jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id*. Here, reasonable jurists would not find the undersigned's conclusion debatable or conclude that petitioner should proceed further. The undersigned therefore recommends that a certificate of appealability not issue.

Accordingly, it is **ORDERED**:

1. Petitioner's request for the appointment of counsel incorporated into his opposition (Doc. 18 at 5) is **DENIED**.

2. Petitioner's request to convert his habeas claim to a § 1983 civil rights claim (Doc. 18 at 4-5) is **DENIED**.

3. The Clerk of Court is directed to send Petitioner a § 1983 civil rights complaint form for his future use, if appropriate.

It is further **RECOMMENDED**:

The Petition be dismissed as untimely and for failure to state a cognizable claim. (Doc. No. 1).

## NOTICE TO PARTIES

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with these findings and recommendations, a party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Dated:     November 29, 2021

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE